SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**JOSEPH H. HUYNH, DC #495403**
Assistant United States Attorney
Joseph.Huynh@usdoj.gov
405 E 8th Avenue, Suite 2400
Eugene, OR 97401
Telephone: (541) 465-6771
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **6:26-cr-00093-MC** |
| **v.** | **UNITED STATES' SENTENCING MEMORANDUM** |
| **BRADLEY VERNON MULLANIX,** | |
| **Defendant.** | |

Defendant Mullanix trafficked in guns and drugs, including rifles and revolvers and pound quantities of methamphetamine. For his actions, he must be held accountable. As a result, the Government recommends a low low-end guideline sentence determined by the Court.

## I. The Offense Conduct

### A. Illegal Possession of Firearms on June 18, 2024

On May 22, 2024, an ATF Confidential Information (CI) contacted ATF indicating that a person he/she knew as "Brad" had an "alleged arsenal of hot and legit" guns for sale. The CI stated they included AR's, AK's, a TEC 9 and variety of hunting rifles and shotguns and handguns to include ammunition. The CI provided "Brad's" phone number ending in 5617 and stated he lived out in Coos Bay. The CI also knew him to be a "drug dealer." The CI was not

sure how big of a dealer, but said he was well connected. The CI provided two pictures of the messages he/she sent to "Brad" asking for the firearms. The CI stated that he/she was looking to connect on the firearms in about two weeks. "Brad's" response was "Yes I can do it." This CI is cooperating for financial benefits and has no convictions involving dishonesty on his/her record. Nonetheless, law enforcement attempted to corroborate information as indicated herein.

ATF checked the number for "Brad" on law enforcement databases and determined the phone number belonged to Bradley Mullanix who lived in Lakeside, Oregon, which is in Coos County. Mullanix is a convicted felon based on a judgment from Coos County Circuit Court case number 11CR0428 for Aggravated Theft I on October 3, 2011, for which he received a prison sentence of sixty-eight months.

On June 10, 2024, Mullanix sent the CI multiple photos of firearms that included long guns and handguns. One of the photos was of a Sig Sauer pistol with its serial number visible. It was reported stolen in December 2023 from a burglary in Bandon, Oregon. Four days later, the CI and Mullanix met in Eugene about the firearms. The conversation was recorded. During the meeting, Mullanix indicated he had multiple firearms he was willing to sell to the CI. A meet was set for the next day.

At ATF's direction, the CI texted Mullanix prior to the meeting indicating that he/she would purchase five firearms: three assault style rifles, a TEC 9 and a Sig Sauer pistol. Mullanix replied that he was unable to find the TEC 9 and the Sig Sauer pistol and asked the CI if he/she wanted to purchase something else. The CI then added a 1911 style pistol. In the end the CI was set to pay Mullanix $2,500 for four firearms. They agreed to meet in Cottage Grove.

On June 18, 2024, at approximately 7:51 pm, the CI arrived at the Walmart in Cottage Grove to obtain the firearms from Mullanix. The meeting was surveilled and recorded. The CI

was provided $3000 in cash, more than the negotiated amount in case Mullanix arrived with more guns than expected.

At approximately 8:50 p.m., law enforcement observed Mullanix arrive at the Walmart driving a grey truck. Mullanix parked near the CI's vehicle. Mullanix was wearing a green shirt, black hat and jeans. The CI walked over to Mullanix's truck and spoke to him. Mullanix and the CI discussed the firearms inside Mullanix's truck for a few minutes and the CI began opening the gun cases that contained the firearms. After the CI inspected the firearms, the CI placed them in the CI's vehicle. Mullanix provided the CI six guns instead four guns: a Privately Made Firearm (PMF) 9mm pistol, an AMT Government model .45 caliber pistol, an unmarked AR rifle with an aluminum receiver, a Ruger 10/22, .22 caliber rifle with an Archangel tactical stock, a Mossberg MMR model rifle, and a Colt New Frontier single action .22 caliber revolver. Mullanix said he traded some of the guns in the photos provided to the CI for the guns he was now selling the CI. Mullanix told the CI that he could probably find the TEC 9, but he had sold the Sig Sauer pistol. Ultimately, the CI provided Mullanix with $3000 for all six firearms and told Mullanix that he/she would be interested in more firearms in the future. Mullanix left the parking lot.

**B. Possession with Intent to Deliver Methamphetamine on February 5, 2025**

On January 9, 2025, the CI received a text message from Mullanix indicating that his drug supplier "fell through" and inquiring if the CI had any source of methamphetamine. The CI replied that he/she would ask around. Later that day the CI informed Mullanix that he/she found someone that could help him. The CI was unable to record the phone call.

/ / /

/ / /

On January 11, 2025, The CI sent Mullanix a text message asking, "what numbers are you looking for 10?". Mullanix replied, "I was @10 4 10" indicating that Mullanix wanting ten pounds of methamphetamine for $10,000.

On January 13, 2025, at approximately 5:00 p.m., the CI placed a recorded phone call to Mullanix. During the call, the CI told Mullanix that his/her guy was good for Mullanix to contact him directly. Mullanix asked the CI if his/her guy was going to "take care" of him/her (a reference to compensation) for the connection and the CI stated yes. The CI then said his/her guy was asking if Mullanix had any "pew pews", referencing firearms. Mullanix said he only had an older firearm. The CI stated that he/she would text Mullanix his/her guy's number.

On February 4, 2025, an undercover agent (UC) texted Mullanix to confirm if he was still interested in doing the drug deal. After receiving no response, the UC made a recorded phone call to Mullanix. Mullanix stated that he had recently bought some methamphetamine but that it was not of the best quality so he was still interested in obtaining more. The UC told Mullanix that he would be traveling through Eugene on February 5, 2025, and that he was told to put aside two pounds for him. Mullanix stated that he had some methamphetamine and this would help "hold him over" before he could get more from his source. After the phone call ended, the UC texted Mullanix confirming $1200 per pound. Around midnight, Mullanix texted back "that's fine."

On February 5, 2025, at approximately 12:00 p.m., the UC called Mullanix to confirmed they were to meet at 6:00 p.m. They agreed to meet in the Eugene area. At approximately 6:15 p.m., the UC contacted Mullanix to coordinate the meet. They eventually met at the Comfort Inn and Suites located at 3060 E 25th Ave. in Eugene.

At approximately 6:30 p.m., Mullanix arrived in the same truck he used during the sale of firearms back in June 2024. He parked next to the UC's vehicle located in the upper lot at the hotel. Mullinax then entered the UC's vehicle sitting in the passenger seat.

The UC asked if there is anyone else in Mullanix's truck. Mullanix told the UC that he just dropped his "girl" off at the Denny's down the street to gamble. The UC told Mullanix that he comes to Eugene on a regular basis to deliver drugs and that they could do deals weekly if Mullanix wanted. Mullanix responded "maybe" but stated he has a guy down south who supplies him with methamphetamine. However, his supplier took a break for three weeks, so Mullanix needed some drugs until then.

The UC then showed Mullanix a quarter pound of methamphetamine that was previously shrink wrapped and previously tested positive for methamphetamine. Mullanix inspected the package and then handed the UC money. The UC asked if the amount was $2400. Mullanix confirmed yes. Law enforcement later confirmed the amount.

The UC then told Mullanix he would get the rest of his methamphetamine from his backpack. Prior to doing so, the UC pulled a scale from his center console to allow Mullanix to weigh the drugs. The UC then handed Mullanix two pounds of methamphetamine that had been previously weighed and field tested by ATF. Mullanix placed the methamphetamine on the scale. At that point, Mullanix was arrested.

## II. The Plea Agreement & Guideline Computations

On May 14, 2026, Defendant pled guilty to a one-count Information, which charged him with possessing with the intent to distribute 500 grams or more of a mixture or substance containing methamphetamine. This was global plea that included resolution of a Coos County case involving the seizure of additional 2 to 3 pounds of methamphetamine, with the state

sentence to run concurrent to the sentence in this case. Obtaining the global resolution was the cause for the delay in resolving his federal case. Consistent with the plea agreement, the Government recommends the following guidelines calculation:

| **Enhancement** | **Government's Position** |
|---|---|
| Base Offense Level<br>USSG § 2D1.1(a)(5) | 30 |
| Acceptance of Responsibility—<br>USSG § 3E1.1(a) | -2 |
| Acceptance of Responsibility—<br>USSG § 3E1.1(b) | -1 |
| Total Offense Level | 27 |
| Early Resolution Variance § 3553 | -3 |
| **Adjusted Offense Level** | 24 |
| **Resulting Guideline Range** | 120 months (mandatory minimum)[1] |

The Government agreed in the plea agreement to recommend the low-end of the applicable guideline range. The Defendant agreed not to seek downward departures or adjustments or variances from the applicable guideline range. Defendant also agree to abandon 6 firearms, ammunition, and $2,400.

## III. Government's Recommended Sentence

Applying the 3553(a) factors for this case and consistent with the plea agreement, the Government is recommending the Court a sentence at the low-end of the applicable guideline range.

/ / /

/ / /

[1] Had a mandatory minimum sentence not applied, the resulting Guideline range would be 57-71 months (CH Cat II).

**A. The Nature and Circumstances of the Offense**

Defendant placed the Coos County community at risk by selling multiple firearms and trafficking in the highly addictive methamphetamine. As such, his crime is severe and the sentence should be as well.

**B. Defendant's History and Characteristics**

Defendant's criminal history spans back to 1999 with numerous convictions for theft and a prior felon in possession of a firearm conviction. However, only his 2009 theft conviction scored. He has other law enforcement contacts as well placing his appropriately in Criminal History Category II.

**C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

Trafficking in drugs destroys not only the lives of its victims, but also the families and communities impacted by it. Trafficking rifles and pistols to whomever will buy them only places that community in more risk.

**D. The Need for the Sentence to Afford Adequate Deterrence**

This Court's enforcing of the recommended low-end guideline range would allow Defendant to take full accountability and responsibility for his drug trafficking. His longest sentence to date is 24 months, so a guideline sentence will hopefully deter him from continuing to do so in the future.

**E. The Need to Avoid Unwarranted Sentencing Disparities**

Defendant is fortunate that he is not facing greater time in custody. The Government's recommendation and the global resolution that allows for concurrent state time, is significant

especially given that the average length of imprisonment for this drug type quantity alone is approximately 61 months.

**IV. Conclusion**

Accordingly, for the reasons set forth above, the Government respectfully recommends a sentence at the low-end of the guidelines resulting in a sentence of 15 months followed by 4 years of supervised release.

Dated: August 13, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Joseph H. Huynh*
JOSEPH H. HUYNH
Assistant United States Attorney